RECEIVED
USDC, WESTERN DISTRICT OF LA
ROBERT H. SHEMWELL, CLERK
DATE 11/7/06

# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# LAFAYETTE-OPELOUSAS DIVISION

| | | |
|---|---|---|
| JEREMIAH D. PROCTOR | * | CIVIL ACTION NO. 04-2241 |
| VERSUS | * | JUDGE MELANÇON |
| COMMISSIONER OF SOCIAL SECURITY | * | MAGISTRATE JUDGE HILL |

## REPORT AND RECOMMENDATION

This social security appeal was referred to me for review, Report and Recommendation pursuant to this Court's Standing Order of July 8, 1993. Jeremiah D. Proctor, born September 26, 1979, filed applications for supplemental security income and disability insurance benefits on July 16, 2002, alleging disability since June 14, 2002, based on arthritis and pneumonia.

## FINDINGS AND CONCLUSIONS

After a review of the entire administrative record and the briefs filed by the parties, and pursuant to 42 U.S.C. § 405(g), I find that there is substantial evidence in the record to support the Commissioner's decision of non-disability and that the Commissioner's decision comports with all relevant legal standards. *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992).

In fulfillment of F.R.Civ.P. 52, I find that the Commissioner's findings and conclusions are supported by substantial evidence, which can be outlined as follows:

**(1) Residual Functional Capacity Assessment (Physical) dated November 19, 2001.** The examiner determined that claimant could lift/carry 20 pounds occasionally and 10 frequently. (Tr. 99). He could stand/walk and sit about six hours in an eight-hour workday. He had unlimited push/pull ability.

Claimant had occasional postural limitations. (Tr. 100). He had limited manipulative ability. (Tr. 101). Claimant was able to perform all routine self care, chores, shop, cook, and clean house. (Tr. 103).

**(2) Records from Northwest Houston Medical Center dated February 26, 2002 to June 27, 2002.** On February 26, 2002, claimant was admitted with coughing up, sneezing, and low-grade fever. (Tr. 110). His diagnosis was left lower lobe pneumonia. (Tr. 109). He was discharged in stable condition.

On June 12, 2002, claimant was admitted with penile discharge and a rash. (Tr. 119-20). The impression was acute urethritis. (Tr. 121).

**(3) Psychiatric Review Technique by Dr. Lawrence Klusman dated November 21, 2002.** Dr. Klusman assessed claimant for borderline intellectual functioning. (Tr. 128-29). He stated that claimant had a medically determinable impairment which did not precisely meet the diagnostic criteria. (Tr. 129). He found

that claimant had a mild restriction of activities of daily living and difficulties in maintaining concentration, persistence, or pace. (Tr. 138).

Claimant had no difficulties in maintaining social functioning. There was insufficient evidence of episodes of decompensation, each of extended duration. Dr. Klusman noted that although claimant might have problems in some areas, his overall mental condition did not meet or equal any listing. (Tr. 140).

**(4) Records from Dauterive Hospital dated May 17, 2002 to July 1, 2002.**

On May 17, 2002, claimant was admitted with burning in the chest, vomiting, and abdominal cramps. (Tr. 161). The assessment was acute gastroenteritis. (Tr. 162).

On June 21, 2002, claimant was admitted with back and penile pain. (Tr. 156). The impression was resolving genital herpes and a urinary tract infection. (Tr. 157).

On June 23, 2002, claimant presented with vomiting, diarrhea, and right arm pain. (Tr. 151-53). Right wrist x-rays showed soft tissue swelling without evidence of fracture or gross misalignment. (Tr. 154). The impression was urethritis and reactive arthritis or wrist effusion likely secondary to gonorrhea. (Tr. 150, 153).

On June 30, 2002, claimant was admitted with chest discomfort, joint pain, and fever. (Tr. 143, 145). The assessment was fever and joint pain. (Tr. 144). He was transferred to University Medical Center ("UMC") at his request.

**(5) Mental RFC Assessment dated November 21, 2002.** Dr. Klusman determined that claimant was moderately limited as to his ability to understand, remember, and carry out detailed instructions, and his ability to set realistic goals or make plans independently of others. (Tr. 165-66). He was not significantly limited in any other area.

**(6) Records from UMC dated June 23, 2002 to October 28, 2002.** On June 23, 2002, claimant complained of right wrist pain and migratory polyarthralgia. (Tr. 228-40). Some purulent fluid was removed from the right wrist. (Tr. 243). During his hospital stay, he was placed on Rocephin for five days, and his symptoms improved greatly with more than 70% improvement in range of motion without pain. The assessment was polyarthralgia and tenosynovitis of the right wrist. (Tr. 238, 244). He was prescribed Levaquin for 14 days. (Tr. 239).

On July 1, 2002, claimant was admitted for left ankle swelling and pain. (Tr. 193-200). X-rays showed no evidence of skeletal joint or soft tissue abnormality. (Tr. 187). The assessment was gonococcal/chlamydial arthritis. (Tr. 199). He was discharged in stable condition.

On July 17, 2002, claimant complained of left ankle, right wrist, and right knee pain with occasional swelling. (Tr. 177). Right forearm x-rays showed soft tissue swelling in the wrist with unremarkable bones and joints. (Tr. 176). His joints had

improved on July 31. (Tr. 174).

In August 26, 2002, claimant complained of pain in his knees associated with stiffness, mainly at night and in the morning. (Tr. 175). He had no inflammation, swelling, or deformities of the joints. He had full range of motion. The middle finger of the left hand was slightly deformed. The assessment was unspecified arthritis. He was stable.

On October 28, 2002, claimant had no complaints. (Tr. 170). He had no deformities, swelling, or inflammation. He had full range of motion. The assessment was post-chlamydial reactive arthritis, which was asymptomatic and stable. He was instructed to continue with the same medications.

**(7) Report from Dr. Naomi L. Friedberg dated October 27, 2002**. Claimant reported that he had arthritic swelling and pain in his joints, hands, and fingers, and a history of having a "minor heart attack" due to side effects from medication he was given in June, 2002 for herpes. (Tr. 247). He indicated that he tried to cut the grass at home, but physically had difficulty doing anything. He had last worked in May, 2002 at a fast food restaurant, and had also worked at Bruce's Food Store and Winn Dixie. He admitted an arrest after missing a court date for a traffic ticket.

Claimant's medications included Sulfasalazine, Doxycycline, and Iboprofen. He reported that he tired very quickly, had chronic pain due to swelling joints, and

5

that his heart pounded frequently.

Administration of the WAIS-II revealed a full scale IQ score of 76, a performance score of 73, and a verbal score of 83, which was in the borderline range. (Tr. 247-48). Dr. Friedberg noted that claimant's high school test scores were likely indicative of a learning disability. Claimant and his mother reported that he was capable of completing hands-on, simple, repetitive types of vocations prior to his physical illness. Dr. Friedberg assumed that "once [claimant's] physical illnesses are under control and improved, he will be capable of going back to the types of vocations he was accomplishing prior to his illness."

Dr. Friedberg further noted that claimant's mood and affect were somewhat depressed and flat, and that he had motor slowing and cognitive slowing. She opined that these impairments "appear[ed] to be somewhat minor and most likely a result of his physical illnesses, and are assumed to ameliorate when his physical illness does." She suggested that his mental status be assessed after his physical symptoms had improved.

**(8) Claimant's Administrative Hearing Testimony.** At the hearing on September 3, 2003, claimant testified that he had last worked about a year and five or six months ago at Popeye's, Arby's, and Taco Bell. (Tr. 256). He stated that he had stopped working because he became ill. He stated that he was not looking for

work at that time.

Claimant complained that he was worse now compared to when he had quit work. (Tr. 257). He stated that he was being treated at UMC, but was no longer taking prescription medication. (Tr. 257-58). He reported that he had problems with his ankles, knees, and hands. (Tr. 258). He also said that his fingernails kept falling off.

Regarding restrictions, claimant testified that he could stand and walk for about an hour and a half before his joints started hurting. (Tr. 259). He stated that he could sit for 20 to 30 minutes. He reported that he could drive, but could not change a flat tire if needed. (Tr. 259-60). He complained that he could not lift his four-year-old nephew.

Additionally, claimant stated that he was able to make a tight fist with both hands. (Tr. 260). He said that he sometimes had problems with buttons or zippers because of wrist pain. He reported that he could peel a potato, but not a half a dozen in a row. (Tr. 261).

As to activities, claimant testified that he ran up to his sister's house on the corner and exercised. (Tr. 261). He also said that he might watch a movie, but did not do too much otherwise.

**(9) Claimant's Mother's Administrative Hearing Testimony.** Claimant's mother, Rebecca Proctor, testified that claimant had problems with bathing, because he needed help getting out of the bathtub. (Tr. 262). She stated that he was cold all of the time during the summer. She also said that his toenails and fingernails started coming off.

Ms. Proctor testified that claimant had gained a little weight since he had been released from the hospital. (Tr. 264-65). She stated that he still had stiffness in his hands and knees. (Tr. 265, 267). She said that claimant was scheduled to go to the doctor for some testing. (Tr. 266).

**(10) The ALJ's Findings.** Claimant argues that: (1) the ALJ erred in using the Medical/Vocational Guidelines, and (2) claimant was unable to do the full range of light work.

At the outset, claimant asserts that the evidence does not support the finding that he could perform the full range of light work because of his mental impairment. (rec. doc. 10, p. 5). In support of his argument, he cites Dr. Friedberg's report which indicates that his mood and affect were somewhat depressed and flat, and that he had motor and cognitive slowing. (rec. doc. 10, pp. 4-5; tr. 248). However, Dr. Friedberg opined that these impairments "appear[ed] to be somewhat minor and most likely a result of his physical illnesses, and *are assumed to ameliorate when his physical*

*illness does.*" (emphasis added). (Tr. 248). According to the latest records from UMC, claimant was asymptomatic and stable as of October, 2002. (Tr. 170). Thus, in Dr. Friedberg's opinion, claimant's mental impairments likely ameliorated when his physical problems did. In any event, there was no evidence to the contrary.

Additionally, claimant argues that the ALJ should have further developed the record by obtaining additional reports or contacting claimant's attorney to advise her that the record was going to be closed. (rec. doc. 10, p. 7). The record reflects that the ALJ left the record open after the hearing to allow claimant to obtain additional medical records. (Tr. 267). However, as of the time of the ALJ's decision, which was almost seven months later, the ALJ had still not received any updated records. (Tr. 11). This was more than ample time for claimant's attorney to have submitted these records to the ALJ for review. Thus, this argument lacks merit.

Further, claimant asserts that the ALJ should have ordered a consultative orthopedic or supplemental psychological evaluation. (rec. doc. 10, pp. 7-8). Under some circumstances, a consultative examination is required to develop a full and fair record. *Jones v. Bowen*, 829 F.2d 524, 526 (5th Cir. 1987). The decision to require such an examination is discretionary. *Id.* In *Turner v. Califano*, 563 F.2d 669, 671 (5th Cir. 1977), the Fifth Circuit stated "[t]o be very clear, 'full inquiry' does not require a consultative examination at government expense unless the record

establishes that such an examination is necessary to enable the administrative law judge to make the disability decision." A claimant must "raise a suspicion concerning such an impairment necessary to require the ALJ to order a consultative examination to discharge his duty of 'full inquiry' under 20 C.F.R. § 416.1444." *Pearson v. Bowen*, 866 F.2d 809, 812 (5th Cir. 1989), quoting *Jones*, 829 F.2d at 526.

As to claimant's orthopedic impairment, the record reflects his arthritic complaints related to venereal diseases which were diagnosed in June-July, 2002. (Tr. 150, 153, 199). By October, 2002, claimant was asymptomatic. (Tr. 170). Clearly, claimant's alleged orthopedic condition falls far short of the 12-month durational requirement. 20 C.F.R. § 404.1505(a). Thus, claimant has failed to raise a "suspicion" that this impairment meets the requirements for disability.

Regarding claimant's mental condition, there are no records that he sought any treatment for mental complaints subsequent to October, 2002. The ALJ observed that "with no additional medical records demonstrating any further treatment, I can only assume the claimant's improvement in October 2002 was permanent." (Tr. 16). *See, Chester v. Callahan*, 193 F.3d 10, 12 (1st Cir. 1999) (gaps in the medical record regarding treatment can constitute "evidence" for purposes of the disability determination); *McGuire v. Commissioner of Social Security*, 178 F.3d 1295 (6th Cir. 1999) (gaps in treatment may reasonably be viewed as inconsistent with a claim of

debilitating symptoms); *Franklin v. Sullivan*, 1993 WL 133774 (E.D. La. 1993). As the ALJ noted, had claimant's mental impairments been as severe as he suggests, claimant would have presumably sought treatment for them subsequent to October, 2002. Thus, there was no need for a supplemental psychological evaluation.

Finally, claimant asserts that the ALJ erred in using the Medical-Vocational Guidelines ("Grids"), found at 20 C.F.R. Pt. 404, Subpt. P, App. 2, in finding him not disabled. (rec. doc. 10, p. 8). He asserts that a vocational expert should have been called to consider his non-exertional impairments of depression and history of a learning disability. (rec. doc. 10, pp. 8-9). However, the record reflects that Dr. Friedberg found that claimant's mental impairments "appear[ed] to be somewhat minor and most likely a result of his physical illnesses, and are assumed to ameliorate when his physical illness does." (Tr. 248). Based on Dr. Friedberg's opinion, the ALJ found that claimant's non-exertional impairments did not significantly affect his ability to perform a full range of light work. (Tr. 17).

The regulations provide that the ALJ may rely exclusively on the Guidelines in determining whether there is other work available that the claimant can perform when the characteristics of the claimant correspond to criteria in the Medical-Vocational Guidelines of the regulations, and that claimant either suffers only from exertional impairments *or his non-exertional impairments do not significantly affect*

*his residual functional capacity.* (emphasis added). *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987); 20 C.F.R. § 404.1569 and Part 404, Subpart P, Appendix 2, Section 200.00. While the ALJ acknowledged that claimant had suffered from non-exertional impairments, he found that they did not significantly affect his RFC. (Tr. 16-17). This is supported by the report of Dr. Friedberg, who found that claimant should be able to return to his past work once his physical illnesses were under control. (Tr. 248). Thus, this argument lacks merit.

Based on the foregoing, it is my recommendation that the Commissioner's decision be **AFFIRMED** and that this action be **DISMISSED** with prejudice.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and F.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within ten (10) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FACTUAL FINDINGS AND/OR THE PROPOSED LEGAL CONCLUSIONS REFLECTED IN THIS REPORT AND RECOMMENDATION WITHIN TEN (10) DAYS FOLLOWING THE DATE OF ITS SERVICE, OR WITHIN THE**

TIME FRAME AUTHORIZED BY FED.R.CIV.P. 6(b), SHALL BAR AN AGGRIEVED PARTY FROM ATTACKING THE FACTUAL FINDINGS OR THE LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT COURT, EXCEPT UPON GROUNDS OF PLAIN ERROR. *DOUGLASS V. UNITED SERVICES AUTOMOBILE ASSOCIATION*, 79 F.3D 1415 (5TH CIR. 1996).

Signed this 6 day of January, 2005, at Lafayette, Louisiana.

C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE